J-S08008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :        PENNSYLVANIA
                                    :
                  v.                     :
                                    :
                                    :
MICHAEL CARTER                :
                                    :
           Appellant          :    No. 1317 MDA 2022

Appeal from the Judgment of Sentence Entered August 15, 2022
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000403-2021

BEFORE:   OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:         **FILED: JUNE 5, 2023**

     Appellant, Michael Carter, appeals from the August 15, 2022 judgment of sentence entered in the Court of Common Pleas of Adams County that imposed an aggregate sentence of 13 years and 9 months to 34 years' incarceration. Appellant pleaded guilty to homicide by vehicle while driving under the influence (a second degree felony) (Count 2), accidents involving death or personal injury (a second degree felony) (Count 5), accidents involving death or personal injury while not properly licensed (a third degree felony) (Count 8), driving under the influence of alcohol or controlled substance ("DUI") (an ungraded misdemeanor – first offense) (Count 13),

_____

[*] Retired Senior Judge assigned to the Superior Court.

driving while operating privilege is suspended or revoked (Count 17), and flight to avoid apprehension, trial, or punishment (Count 8).[1]  We affirm.

The trial court summarized the factual history as follows:

On March 18, 2021, [] Appellant was on state parole from sentences imposed by [the trial] court for two convictions for felony possession with intent to deliver cocaine.  At 9:30 a.m.[,] on that day, while high on a cocktail of various drugs including eutylone, cocaine, [] methamphetamines, and alcohol, Appellant made the deadly decision to drive in Straban Township, Adams County[, Pennsylvania].

Meanwhile, the victim[] and his wife[] were minding their own business, going about life as normal and were at [a gas station and convenience store] in Straban Township, Adams County. [The victim] was standing between his vehicle and the gas pump to begin filling his vehicle with gas.  [The victim's wife] was a seated passenger in the vehicle at the time.  Appellant, who had no driver['s] license, failed to stop [his vehicle] at a clearly marked stop sign[.  Appellant's vehicle] traveled across several intersecting lanes of traffic into the [gas station] parking lot at an excessively high rate of speed before slamming into gas pumps [and] eventually driving through a gas pump striking the [victim's] vehicle pushing it sideways into [the victim] and trapping [the victim] between his vehicle and the gas pump.

While [the victim] was trapped for almost an hour, he remained partially conscious despite suffering severe injuries.  [The victim's wife] was trapped inside the vehicle, watching her husband suffer until emergency personnel could extricate her from the vehicle. Appellant, meanwhile, fled the scene on foot before [the] police could arrive.  After an excruciating amount of time, emergency personnel were finally able to free [the victim] from his pinned position and transport[ed] him to [a hospital] for serious bodily injuries, including one of his feet being nearly amputated at the scene and attached only by skin.

_____

[1] 75 Pa.C.S.A. §§ 3735(a), 3742(b)(3)(i), 3742.1(a)(1), 3802(d)(1(ii), and 1543(a), as well as 18 Pa.C.S.A. § 5126(a), respectively.

Police [officers] eventually located [] Appellant, based on eyewitness descriptions, a short time later near State Route 116 in Adams County. During Appellant's interaction with police, he was clearly and highly intoxicated[,] and Appellant informed arresting [police] officers that he had been using drugs all night long prior to getting behind the wheel of a borrowed vehicle.

[T]he injuries suffered by [the victim] included amputations, multiple surgeries, a punctured lung, a punctured spleen, and the need for life support. [The victim] succumbed to his injuries and died as a result of them on May 4, 2021, after suffering in a hospital bed for more than six weeks after the incident.

Trial Court Opinion, 10/19/22, at 2-4.

Appellant was charged with the aforementioned criminal offenses, as well as third-degree murder (Count 1), recklessly endangering another person (2 counts) (Count 11 and Count 12), aggravated assault by vehicle while driving under the influence (2 counts) (Count 3 and Count 4), homicide by vehicle (Count 6), accidents involving death or personal injury (Count 7), accidents involving death or personal injury while not properly licensed (Count 9), and driving under the influence of a controlled substance (3 counts) (Count 14, Count 15, and Count 16).[2] On May 2, 2022, Appellant entered an open guilty plea to Counts 2, 5, 8, 10, 13, and 17. On August 15, 2022, the trial court sentenced Appellant as follows: Count 2 – 5 to 10 years' incarceration with the sentence set to run consecutively to any sentence imposed as a result of Appellant's parole violation; Count 5 - 5 to 10 years' incarceration with the

_____

[2] 18 Pa.C.S.A. §§ 2502(c) and 2705 (2 counts), as well as 75 Pa.C.S.A. §§ 3735.1 (2 counts), 3732, 3742, 3742.1(a)(1), 3802(d)(1)(i) (Count 14), 3802(d)(1)(iii) (Count 15), and 3802(d)(2) (Count 16), respectively.

sentence set to run consecutively to the sentence imposed for Count 2; Count 8 – 2 years and 3 months to 7 years' incarceration with the sentence set to run consecutively to the sentence imposed for Count 5; Count 10 – 1 year and 6 months to 7 years' incarceration with the sentence set to run consecutively to the sentence imposed for Count 8; and Count 17 – payment of a mandatory fine of $200.00.[3]  As part of his sentence, Appellant was not eligible for the recidivism risk reduction incentive ("RRRI") program.

On August 24, 2022, Appellant filed a post-sentence motion, seeking a reduction of sentence on the ground the trial court, in fashioning its sentence, failed to consider that Appellant "availed himself of treatment during his addiction."  Post-Sentence Motion, 8/24/22, at ¶3.  The trial court denied Appellant's post-sentence motion on August 25, 2022.  This appeal followed.[4]

Appellant raises the following issue for our review: "Did the trial court abuse its discretion by imposing an excessive sentence?"  Appellant's Brief at 5.

---

[3] For sentencing purposes, Appellant's conviction at Count 13 merged with his conviction at Count 2.  As part of the sentence imposed at Count 5, Appellant was ordered to pay a mandatory fine of $2,500.00.  The trial court did not impose a fine at Counts 2, 8, or 10.  Appellant was also ordered to pay the cost of prosecution ($670.00) and awarded credit for time served (515 days).

[4] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant's issue challenges the discretionary aspects of his sentence, arguing that the trial court abused its discretion when it imposed an excessive punishment without first considering mitigating circumstances. ***Id.*** at 8.

> It is well-settled that "the right to appeal [the] discretionary aspect[s] of [a] sentence is not absolute." ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his[, or her,] appeal as a petition for allowance of appeal. ***Commonwealth v. W.H.M.***, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in ***Commonwealth v. Moury***, 992 A.2d 162 (Pa. Super. 2010):
>
> > An appellant challenging the discretionary aspects of his[, or her,] sentence must invoke this Court's jurisdiction by satisfying a four-part test:
> >
> > We conduct a four-part analysis to determine: (1) whether [the] appellant [] filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [***see***] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> [***Moury***, 992 A.2d] at 170. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. ***Commonwealth v. Kenner***, 784 A.2d 808, 811 (Pa. Super. 2001).

***Commonwealth v. Hill***, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted). If an appellant fails to challenge the discretionary aspects of a sentence either by presenting a claim to the trial court at the time of sentencing or in a post-sentence motion, then the appellant's challenge is waived. ***Commonwealth v. Lamonda***, 52 A.3d 365, 371 (Pa. Super. 2012)

(*en banc*) (citation omitted), *appeal denied*, 75 A.3d 1281 (Pa. 2013). A substantial question exists when an appellant presents a colorable argument that the sentence imposed is either (1) inconsistent with a specific provision of the Sentencing Code or (2) is "contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa. Super. 2010), *appeal denied*, 14 A.3d 825 (Pa. 2011). Allegations that the trial court imposed an excessive sentence paired with assertions that the trial court failed to consider mitigating circumstances raise a substantial question that the sentence was inapposite to the Sentencing Code. **Commonwealth v. Kurtz**, ___ A.3d ___, 2023 WL 3138750, at *17 (Pa. Super. Apr. 28, 2023) (slip copy), *relying on* **Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*), *appeal denied*, 126 A.3d 1282 (Pa. 2015).

Here, the record reflects that Appellant filed a timely notice of appeal and properly preserved a challenge to the discretionary aspects of his sentence in a post-sentence motion requesting a reduction of sentence. Appellant also included a Rule 2119(f) statement in his brief. Appellant's Brief at 8. In his Rule 2119(f) statement, Appellant argues that the trial court imposed an excessive sentence without considering certain mitigating circumstances. **Id.** Specifically, Appellant asserts that the trial court failed to consider that "this was the only DUI in Appellant's [50] years of life, [] Appellant never received intensive treatment for what was clearly the disease of addiction, and [] the injur[ies] he caused his victims, though grievous, were

without any malice on Appellant's part." *Id.*, *relying on* Appellant's Rule 1925(b) Statement, 10/4/22. In so arguing, we find that Appellant raises a substantial question regarding the trial court's alleged failure to consider mitigating circumstances before imposing what Appellant asserts was an excessive sentence. *Kurtz*, ___ A.3d ___, 2023 WL 3138750, at *17; *see also Caldwell*, 117 A.3d at 770. Therefore, we proceed to consider the merits of Appellant's discretionary sentencing claim.

Here, Appellant concedes that the trial court imposed individual sentences that fell within the standard range of the sentencing guidelines but asserts that the trial court failed to consider his rehabilitative needs in fashioning Appellant's over-all sentence. Appellant's Brief at 9, 16. To support this claim, Appellant notes that the trial court confined him to a state correctional institution without ordering that he undergo treatment for drug and alcohol addiction. *Id.* at 13. Appellant argues,

> What Appellant requested of the trial court and avers he did not receive is a consideration of his rehabilitative needs. The [trial] court patently took into account the gravity of the offense in relation to its impact on the victim and the community. The trial court never in its sentencing order or [Rule] 1925(a) opinion addressed Appellant's rehabilitative needs other than to say Appellant had been given opportunities to rehabilitate himself, to which he had been indifferent. Appellant avers that he was in fact a dying man, drowning in his own addiction, repeatedly in a criminal justice system that punished but did not treat - at least in any meaningful way. If he can be treated and made well, finally, for the addictions that have consumed him, he can atone for his grievous mistake but still be a contributing member of society.

*Id.* at 16-17 (extraneous capitalization omitted).

It is well-established that "[w]hen imposing a sentence, a [trial] court must consider the factors set forth in 42 Pa.C.S.A. § 9721(b)." *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa. Super. 2008), *appeal denied*, 963 A.2d 467 (Pa. 2008). Section 9721(b) of the Sentencing Code, in pertinent part, states,

> the [trial] court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with [S]ection 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The [trial] court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under [S]ection 2155 (relating to publication of guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation).

42 Pa.C.S.A. § 9721(b). In determining the place of confinement, a state correctional facility or a county prison facility, Section 9762 of the Sentencing Code states that for sentences having a maximum term of five or more years, the defendant shall be committed to a state correctional facility. 42 Pa.C.S.A. § 9762(b)(1).

Appellate review of a trial court's sentencing determination is governed by Section 9781(c) of the Sentencing Code.

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the [trial] court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable."

*Commonwealth v. Bowen*, 975 A.2d 1120, 1123 (Pa. Super. 2009), *citing*

42 Pa.C.S.A. § 9781(c).  In reviewing sentencing matters, we are mindful of

our well-settled standard of review.

> Sentencing is a matter vested in the sound discretion of the [trial court], and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill[-]will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009).

The trial court, in the case *sub judice*, reviewed a pre-sentence

investigation ("PSI") report before fashioning Appellant's sentence.[5]  Trial

Court Order, 8/19/22, at 2 (unpaginated); *see also Commonwealth v.*

*Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016) (stating, "[w]here the [trial

---

[5] In the sentencing order, the trial court stated,

> The [trial] court [] received and reviewed the [PSI] report and [] also entertained a number of victim impact statements.  The [trial] court [] also reviewed letters in support of [Appellant] submitted by defense counsel, as well as statements on [Appellant's] behalf.

> From the PSI [report], it is noted [Appellant] has 21 adult arrests with 11 convictions.  As indicated by [the trial] court prior to entry of this order, multiple opportunities have been given to [Appellant] for local rehabilitation, none of which [were] effective [in] avoid[ing the] tragic circumstances in this case.

Trial Court Order, 8/19/22, at 2 (unpaginated).

court] had the benefit of a [PSI] report, it will be presumed that [the trial court] was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors" (original brackets, original quotation marks, and citation omitted)), *appeal denied*, 159 A.3d 935 (Pa. 2016).  Additionally, at the sentencing hearing, the trial court heard from, *inter alia*, Appellant who explained his addiction and prior attempts at rehabilitation, in pertinent part, as follows:

> Since I first used heroin at age 15, my life has been largely about my addiction.  I've been to jail probably 10 times[,] always drug related.  I sold drugs to finance my habit.  I never made money [from] selling drug[s] other than to supply my own habit.
>
> When I [went] to jail, I would get clean.  I would come out of jail determined to stay clean.  I'd get a job.  But then I would start thinking about getting high again.  I turned [to abusing] cocaine because it wouldn't make me sick when I couldn't get it[, unlike heroin when I was un]able to get heroin.
>
> I always thought I was okay basically because even when I was using heavily, I would be able to work, usually at a restaurant, to keep a roof over my head.  I never had a DUI[,] and I never had a car accident.  I never had health insurance[,] and I never could afford to go to rehab[ilitation].  But even if I could, I don't know that I would have.  I thought I was functioning okay in the world I knew.
>
> . . .
>
> Once I stayed clean for a year and a half.  But I always [went] back to [drug use.]  I had some treatment at [a rehabilitation facility] when I was on work release from Adams County Prison[,] and it did work for a while.  But then I would go back to my old ways.

N.T., 8/15/22, at 16-18.

In fashioning Appellant's sentence, the trial court explained,

[The trial court] also note[s] that [the Commonwealth's] history of opportunities given to [Appellant] is indeed accurate.[6 Appellant's] history reveals one of significant drug addiction

_____

[6] The Commonwealth provided the following re-cap of Appellant's history with the trial court:

Your Honor, [Appellant's] prior record score is a five. The [trial] court is aware of that based on the [PSI report]. But the history of the opportunities this [Appellant] has had I think is worthy of noting.

He first came before Adams County Court of Common Pleas back in 2014, where he was given [a maximum] county sentence for four deliveries of cocaine. At his first revocation hearing in 2015, [the] Commonwealth sought a state [prison] sentence[,] but his revocation was actually suspended to the [back] time and his supervision was reduced. He was paroled over the Commonwealth's objection in 2016.

At his second parole violation or probation violation hearing, the Commonwealth, again, asked for a state prison sentence and [Appellant] was, again, given an opportunity to avail himself of rehabilitation over the Commonwealth's objection and once again got a [county] sentence.

Then, again, he was paroled over the Commonwealth's objection in November [] 2017, [upon serving] his minimum [sentence]. At his third probation violation, he was finally sentenced to state prison for one to five years in November [] 2018. While on that supervision, he committed this offense. But also while on [county] supervision for that case, he committed a new felony [for] drug delivery and again was given a [county] sentence[ and] an opportunity to rehabilitate himself.

Of note, I think at [the time of sentencing in November] 2018, [the trial court] basically [] outlined the court's efforts to give [Appellant] an opportunity to rehabilitate himself, he didn't avail himself of that. He made the same claims for leniency based upon addiction, that he had turned his life around, that he now had stable employment. But despite that, here we are.

N.T., 8/15/22, at 6-7 (extraneous capitalization omitted).

through the years and mostly drug offenses through the majority of his adult life. [The trial court] presided over sentencing and revocation in this case and recall[s] vividly some prominent business members and pastors and people in the community speaking on [Appellant's] behalf at the original sentencing for the drug conviction that [Appellant] currently has [as] a state parole hit [] and then at the revocation [hearing], as well.

And it's pretty evident that [Appellant has] been given multiple opportunities to address the addiction. And addiction is, of course, [] a horrible disease. But, again, those circumstances, those opportunities have repeatedly been given to [Appellant] through the years.

[The trial court had] indeed made provisions for local rehabilitation prior to revocation, third revocation when sentenced to [a state correctional facility], all of which included drug and alcohol treatment. It's evident to note that the [trial] court and the [p]robation department cannot cure addiction. It requires an effort by a person to avail him[self] or herself of opportunities given to improve themselves.

And while [Appellant] is [not, in the trial court's opinion], inte[n]tionally violent, the danger posed to the community is obviously - is obvious and self-evident here. Circumstances that took - tragically took [the victim's] life due to what [the trial court considers] to be [Appellant's] selfish and callus actions could have occurred anywhere at any time to any victim in our community.

[T]hat kind of conduct after multiple attempts at local rehabilitation [treatment services] evidences that [Appellant] poses a highest degree of random danger to the community at large.

*Id.* at 21-22 (extraneous capitalization omitted).

A review of the record demonstrates that the trial court, in fashioning Appellant's overall sentence, specifically referred to, and considered, Appellant's rehabilitative needs, as well as the protection of the public and the gravity of the offense. As discussed *supra*, the trial court was apprised of all necessary facts, through its review of the PSI report, a letter and impact

statements provided by the victim's family, the testimony of a character witness, and Appellant's own statement, as well as the trial court's knowledge of Appellant's prior criminal history and long battle with drug and alcohol addiction. We presume that the trial court applied those facts in fashioning Appellant's sentence.

We reject Appellant's assertion that the trial court failed to consider his rehabilitative needs, *i.e.*, his need to participate in drug and alcohol treatment. Appellant bases this claim exclusively upon the trial court's failure to specifically state in its sentencing order that such treatment programs shall be provided to Appellant. This contention is unavailing. Section 93.12 of the Pennsylvania Code governing the Department of Corrections – State Correctional Institutions and Facilities provides that an inmate has a right of access to, *inter alia*, health care professionals and prescribed treatment for serious medical needs, and each state correctional institution is required to establish procedures to permit such access by inmates. 37 Pa. Code § 93.12(a). As part of an inmate's access to health care professionals and treatment, an inmate may receive access, free of charge, to, *inter alia*, mental health treatment and social service programs, including, but not limited to, substance abuse groups and counseling. 37 Pa. Code § 93.12(d)(6) and (17). Thus, despite the absence of a directive in the sentencing order that rehabilitative treatment services, *i.e.*, substance abuse groups and counseling services, be provided to Appellant, such services are, nevertheless, provided

to Appellant automatically. Therefore, we do not find the trial court abused its discretion in sentencing Appellant.[7]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/05/2023

---

[7] To the extent Appellant asserts that the trial court abused its discretion by imposing consecutive sentences or ordering that Appellant serve his sentence in a state correctional institution, we find these assertions to be without merit. First, "[l]ong[-]standing precedent recognizes that the Sentencing Code affords the [trial] court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." **Commonwealth v. Brown**, 249 A.3d 1206, 1212 (Pa. Super. 2021) (original brackets and ellipsis omitted), *citing*, **Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa. Super 2005); **see also** 42 Pa.C.S.A. § 9721. Second, even if the trial court set Appellant's individual sentences to run concurrently with each other, Appellant's maximum sentence of 10 years would have required his incarceration to be in a state correctional institution. 42 Pa.C.S.A. § 9762(b)(1) (stating that, all persons sentenced to a maximum term of five or more years "shall be committed to the Department of Corrections for confinement").